IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PEDRO ALICEA | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-3437 |
| | : | |
| CITY OF PHILADELPHIA, et al. | : | |

**MEMORANDUM**

**Chief Judge Juan R. Sánchez**                                        **December 6, 2022**

Plaintiff Pedro Alicea brings this civil rights suit against the City of Philadelphia and ten former Philadelphia Police officers or their estates pursuant to 42 U.S.C. § 1983. Alicea claims he was wrongfully convicted of a 1985 double murder and spent 31-and-a-half years behind bars for a crime he did not commit. Defendants City of Philadelphia ("City"), Sergeant Joseph Descher, Detective Charles Brown, and Lieutenant Herbert Gibbons move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

**FACTS**

On February 29, 1985, Hector and Luis Camacho were shot and killed in the West Kensington neighborhood of Philadelphia. Am. Compl. ¶ 33, ECF No. 17. In the days that followed, many signs pointed to Wilson and Manuel Santiago as the perpetrators. *See id.* ¶ 38. As memorialized in various officers' notes, multiple neighborhood sources—including the Camachos' mother and Hector Camacho's widow—identified the Santiago brothers and their compatriots as the culprits. *Id.* ¶¶ 40, 45, 47. The Camachos' bodies were found in front of a building out of which the Santiago brothers ran a drug-trafficking business. *Id.* ¶ 39. The victims themselves were involved in the drug trade as well, and often bought their supply from the

Santiagos. *Id.* ¶ 34. Sources told police the Camachos had gone to speak with the Santiagos on the day of the murders to resolve a dispute about the quality of the drugs being sold. *Id.* ¶ 45. Finally, police received an anonymous tip that "the doer on this job is Wilson Santiago." *Id.* ¶ 49. This tip was memorialized in a memorandum which was shared with Philadelphia Police Department ("PPD") supervisors. *Id.*

Despite this early lead, the investigation stalled for nearly a year. *Id.* ¶ 55. In October of 1986, another eyewitness, Maria Torres, identified the Santiago brothers as the shooters. *Id.* ¶ 56. Another two years went by with no developments in the case. *Id.* ¶ 72. In January 1989, an incarcerated informant named Angel Fuentes contacted Defendant Officer Miguel Deyne, with whom he had a longstanding prior relationship, hoping to reduce his sentence in exchange for providing information on outstanding cases. *Id.* ¶ 76. Deyne and his fellow officers fed Fuentes false testimony implicating Alicea, who Deyne knew and sought revenge against as a result of his impeaching testimony in an unrelated case in the past. *Id.* ¶¶ 78-79, 85. The police also pressured Fuentes into falsely identifying Alicea during a formal photo array procedure. *Id.* ¶ 92. While preparing to arrest Alicea, police interviewed another incarcerated informant, Carlos Diaz, who told them the Santiago brothers had a motive and plan to kill the Camachos. *Id.* ¶¶ 97-100. However, police disregarded this information, instead choosing to bolster their case against Alicea by pressuring Jose DeJesus, Wilson Santiago's stepson, to adopt a fabricated statement implicating Alicea. *Id.* ¶ 105. After submitting an affidavit relying solely on the false statements of Fuentes and DeJesus, police executed an arrest warrant on Alicea on March 24, 1989. *Id.* ¶¶ 109, 113.

In preparing the case for trial, the defendant officers prepared a "homicide binder" with selected evidence from their file to give to the District Attorney's Office (DAO). *Id.* ¶ 116. The police did not include the homicide file's extensive exculpatory evidence in the binder, such as the

statements of Maria Torres and Carlos Diaz, or the handwritten notes from the file which included the anonymous tip that Wilson Santiago was the "doer." *Id.* ¶ 117.

Further seeking to bolster their case, a few weeks before trial, the defendant officers questioned an individual named Reinaldo Velez, who had been identified in 1985 by an eyewitness to the Camachos' murders as one of two men involved in the shooting. *Id.* ¶¶ 122-23. The officers told Velez they would charge him with the murders "unless he adopted a false statement claiming that Alicea was the shooter." *Id.* ¶ 124. Based on the fabricated statements and testimony of Fuentes, DeJesus, and Velez, and over his protests that he was living in Puerto Rico at the time of the murders, Alicea was convicted at trial and sentenced to life imprisonment. *Id.* ¶¶ 35, 132-33.

Alicea challenged his conviction through an application under the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. § 9541, *et. seq.* and a petition for writ of habeas corpus under 28 U.S.C. § 2254, but both were denied as untimely filed. *Id.* ¶¶ 160-61. In November 2017, he filed a motion for reconsideration of his denied habeas petition under Federal Rule of Civil Procedure 60(b). *Id.* ¶ 162. In preparing a response to that motion, the DAO, pursuant to a newly enacted policy, obtained and reviewed the homicide file that had been prepared by PPD. *Id.* ¶¶ 163-64. Realizing the file included significant exculpatory information that was not in the binder and had never been shared with anyone outside of the PPD, the Conviction Integrity Unit at the DAO opened an investigation into Alicea's conviction. *Id.* ¶¶ 165-67. The DAO concluded the suppressed information—especially the statements of Maria Torres and Carlos Diaz—required a new trial. *Id.* ¶¶ 169-70. On October 23, 2020, the Philadelphia Court of Common Pleas entered an order vacating Alicea's conviction, and granted the DAO's motion to *nolle prosse* the charges. *Id.* ¶ 171.

Alicea subsequently brought this civil action to recover damages for his 31-and-a-half years of wrongful imprisonment. He alleges the PPD's actions in conjunction with his prosecution were part of a "long-established history" of unconstitutional conduct, including withholding exculpatory evidence, using coercive techniques in interviews, and fabricating inculpatory evidence. *Id.* ¶¶ 173-74. Further, Alicea claims the City knew about and acquiesced in these practices, and was deliberately indifferent to the constitutional rights of Philadelphians. *Id.* ¶ 177.

Counts I, II, III, and V are against individual defendants, and include the following claims: fabrication of evidence in violation of the Fourteenth Amendment, malicious prosecution in violation of the Fourth and Fourteenth Amendments, suppression of exculpatory evidence in violation of the Fourteenth Amendment, and malicious prosecution in violation of Pennsylvania state law. Count IV brings a claim of municipal liability against the City, alleging the City acted with deliberate indifference towards the violations of Alicea's constitutional rights.

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can

be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Defendants argue: (1) all claims against Sergeant Descher and Lieutenant Gibbons must fail because these defendants were not personally involved in the alleged violation of Alicea's rights; (2) qualified immunity shields the individual defendants from liability for certain claims; and (3) Alicea fails to plead the facts required for a claim of municipal liability. Each dispute will be considered in turn.

First, Defendants contend any claims against Sergeant Descher and Lieutenant Gibbons must be dismissed because the Amended Complaint fails to plead that they were personally involved in the alleged violations of Alicea's constitutional rights. Def.'s Mem. Supp. Mot. Dismiss 7, ECF No. 23-2. A defendant in a civil rights suit must have "personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement may be shown either through personal direction or knowledge and acquiescence. *Id.* Here, Alicea alleges Descher and Gibbons were aware of the exculpatory evidence pointing to another suspect, and that they failed to take any action to prevent the malicious prosecution of Alicea from going forward. Am. Compl. ¶ 103. Further supporting a claim of knowledge and acquiescence, Gibbons allegedly received a written memorandum memorializing a call from an anonymous tipster who identified the "doer" as Wilson Santiago. *Id.* ¶ 49.

These allegations are sufficient to establish personal involvement through knowledge and acquiescence. The pleading standard of a civil rights complaint is met where the complaint alleges the conduct violating constitutional rights, the time and place of the violation, and those

responsible. *Hall v. Pa. State Police*, 570 F.2d 86, 89 (3d Cir. 1978). Alicea's Amended Complaint fairly alleges the conduct (knowledge of violations, either through "interactions with others involved in the investigation," "review of materials compiled in the homicide file," or receipt of a written memorandum), the time and place (at PPD for four years after the murder), and those responsible (the individual defendants). *See* Am. Compl. ¶¶ 49, 103. No more is required at this stage in the litigation.

Further, while bare *respondeat superior* is not a basis for civil rights liability, if a complaint alleges a close relationship between the actors and their supervisor, such that the supervisor is clearly aware of the actions of their underlings, the supervisor can be said to have personal involvement in the violation. *See Rode*, 845 F.2d at 1208 (reasoning that the Governor of Pennsylvania's role is too large for him to be personally involved, where the complaint only alleges a grievance was filed in his office); *see also Argueta v. U.S. Imm. & Customs Enf't*, 643 F.3d 60, 77 (3d Cir. 2011) (finding no personal involvement where the individual defendants had "national and even international policymaking and supervisory responsibilities"). The chain of command amongst the defendants here is direct enough to plausibly suggest personal involvement on the part of the PPD supervisors. The Amended Complaint claims the individual defendants personally knew of the evidence pointing to Alicea's innocence, either through review of the department's work or specific receipt of evidence. *See Carter v. Smith*, Civ. No. 08-279, 2009 WL 3088428, at *5 (E.D. Pa. Sept. 22, 2009). These alleged facts are sufficient to plausibly show the personal involvement of Descher and Gibbons in the violation of Alicea's rights.

Next, Defendants contend two of Alicea's claims must be dismissed because the individual defendants against whom they are brought are protected by qualified immunity. Def.'s Mem. Supp. Mot. Dismiss 7, ECF No. 23-2. Qualified immunity protects government officials like police

officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine is not applicable when an official is alleged to have violated a "clearly established right," where it is "sufficiently clear that every reasonable person would have understood that what he is doing violates that right." *Riechle v. Howards*, 566 U.S. 658, 664 (2012). In order to assess whether an alleged violation was of such a right, a court must "identify the exact contours of the underlying right" with sufficient specificity. *Berg v. Cty. of Allegheny*, 219 F.3d 261, 268 (3d Cir. 2000). Defendants argue the rights to be free from malicious prosecution and to receive exculpatory evidence, both arising under the Fourteenth Amendment, were not clearly established at the time of the alleged conduct. Def.'s Mem. Supp. Mot. Dismiss 8, ECF No. 23-2.

It is unclear whether a right to be free from malicious prosecution exists under the Due Process Clause of the Fourteenth Amendment. The Supreme Court has expressly held that there is no substantive due process right to be free from malicious prosecution. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). While the Third Circuit has not yet been called to decide whether malicious prosecution claims can be grounded in procedural due process, it has "suggest[ed] that Supreme Court case law leaves only the Fourth Amendment as [a] potential source of malicious prosecution claims." *Gallo v. City of Phila.*, 161 F.3d 217, 222 (3d Cir. 1998). Given that the law remains unsettled to this day, a Fourteenth Amendment procedural due process right to be free from malicious prosecution could not have been "clearly established" at the time of the individual Defendants' conduct. *See Thomas v. City of Phila.*, 290 F. Supp. 3d 371, 382 (E.D. Pa. 2018).

Alicea attempts to evade this inevitable conclusion by arguing that it "is of no consequence to the question of whether the right was clearly established, because the proper inquiry is whether

the right itself—rather than its source—is clearly established." Pl.'s Mem. Opp. Def.'s Mot. Dismiss 19, ECF No. 26 (quoting *Russo v. City of Bridgeport*, 479 F.3d 196, 212 (2d Cir. 2007)). Under this reading, the distinction between the source of the right to be free from malicious prosecution in either the Fourth or Fourteenth Amendment is immaterial. *Id.* As Alicea correctly notes, however, this "conduct focused" approach was squarely considered and rejected by another court in this district in *Thomas v. City of Philadelphia*, 290 F. Supp. 3d 371 (E.D. Pa. 2018). Pl.'s Mem. Opp. Def.'s Mot. Dismiss 19 n.7, ECF No. 26. Instead, *Thomas* held that the "rights-centric position," concerned with the source of the right rather than the conduct from which it protects, "is the correct one." *Id.* at 382-83 ("It would be strange to say that right *X* is clearly established just because right *Y* is clearly established and happens to prohibit the same conduct."). In addition, the Supreme Court has emphasized the importance of articulating the precise contours of the underlying right in the realm of qualified immunity, such that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment . . . must be the guide for analyzing these claims." *Albright v. Oliver*, 510 U.S. 266, 273 (1994). This focus on the specific Amendment cuts against Alicea's suggested "conduct-focused" approach. Count II will therefore be dismissed to the extent that it relies on the Fourteenth Amendment but will proceed to discovery on Alicea's Fourth Amendment theory.

Defendants also argue that qualified immunity protects the individual defendants against Count III, because the right to be free from suppression of exculpatory evidence under the Fourteenth Amendment was not clearly established at the time of the alleged conduct. Def.'s Mem. Supp. Mot. Dismiss 8, ECF No. 23-2. They frame Alicea's claim as seeking to impose liability for failing to comply with *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* This mischaracterizes and

oversimplifies Alicea's claim, which is for "intentionally concealing and deliberately suppressing exculpatory evidence" in violation of the Fourteenth Amendment. Am. Compl. ¶ 200. While the rights codified in *Brady* were not clearly established during the period in question, the right to a fair trial was crystal clear. *See Pyle v. Kansas*, 317 U.S. 213, 216 (1942). As in *Dennis v. City of Philadelphia*, 19 F.4th 279 (3d Cir. 2021), Alicea "did not limit [his claim] to a mere failure to disclose exculpatory and impeachment evidence." *Dennis*, 19 F.4th at 290. Instead, as in *Dennis*, Alicea claimed "the detectives violated his due process rights to a fair trial by concealing and/or suppressing relevant and material evidence as part of a larger scheme" to frame him for the Camachos' murders. *Id.* at 291. As Defendants acknowledge in their reply brief, these allegations are larger than, and not "coterminous" with, a *Brady* claim. Def.'s Reply Br. Supp. Mot. Dismiss 2, ECF No. 27. While qualified immunity may shield defendants from Count III to the extent it makes a *Brady* claim, it does not protect against a deliberate suppression of evidence claim and may proceed on that basis.

Finally, Defendants maintain the City cannot be held liable for the alleged conduct of other individuals because Alicea fails to plead a plausible *Monell* claim. Def.'s Mem. Supp. Mot. Dismiss 10, ECF No. 23-2 (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). A municipality may be held liable for constitutional violations under § 1983 if a plaintiff proves the existence of a "policy or custom that amounts to deliberate indifference." *Carswell v. Borough of Homestead*, 381 F.3d 235, 244 (3d Cir. 2004). Because *Monell* liability requires a deliberate disregard of rights, it cannot be used to hold municipalities accountable for the violation of rights that were not clearly established. *Thomas*, 290 F. Supp. 3d at 387 ("[A] municipality cannot be deliberately indifferent to a right that is not clearly established."); see also *Ogrod v. City of Phila.*, Civ. No. 21-2499, 2022 WL 1093128, at *15 (E.D. Pa. Apr. 12, 2022) ("While the Third Circuit

has not yet addressed this same issue, district courts in this District have similarly concluded that where rights are not clearly established, there can be no municipal liability under *Monell*."). Therefore, because the right under the Fourteenth Amendment to be free from malicious prosecution was not clearly established at the time of the alleged conduct as explained above, the City will not be held to answer for this claim.

However, the claims that will proceed against the individual defendants may also proceed against the City under *Monell*, if its requirements for such liability are met. There are two ways in which a plaintiff can allege a claim for municipal liability: through a policy or custom of the municipality that led to constitutional violations, or through a municipality's failure to act which "reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotation marks and citation omitted). Alicea argues his claim is valid under either theory of recovery. Pl.'s Mem. Opp. Def.'s Mot. Dismiss 9, ECF No. 26.

Under the first method, a plaintiff need not allege an "official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation marks and citation omitted). Liability may also be proven through a custom, or a "given course of conduct that although not specifically endorsed or authorized by law, is so well-settled and permanent as to virtually constitute law." *Bielevicz v. Dubinon*, 915 F.2d 845, 860 (3d Cir. 1990). Customs need not be affirmative acts: "deliberate indifference, lack of compliance, and failure to adhere to . . . standards" may constitute custom. *A v. Nutter*, 737 F. Supp. 2d 341, 362 (E.D. Pa. 2010). However, a plaintiff must show that the alleged custom proximately caused their injury. *Bielevicz*, 915 F.2d at 851. Proximate cause may exist where the "occurrence of the specific violation was made reasonably probable by permitted continuation of the custom," or the municipality failed to act after being put on notice of a constitutional deficiency. *Id.* (internal

quotation marks and citation omitted); *see also Brandon v. Holt*, 469 U.S. 464, 467 (1985) (recognizing that continued tolerance of reported constitutional deficiencies facilitates similar conduct in the future).

The Amended Complaint includes sufficient facts to plausibly show that the City had a custom of acquiescing to widespread unconstitutional actions by the PPD. Specifically, Alicea alleges the City knew but did not stop the PPD from creating activity sheets without turning them over to attorneys, using coercive language in witness interviews, fabricating inculpatory evidence, and concealing exculpatory evidence. Am. Compl. ¶ 174. To show the City had the requisite knowledge of these allegedly pervasive actions, Alicea cites newspaper articles, government investigations, and a number of other cases of police misconduct. *See id.* ¶¶ 175-76. While the facts of some of the cited cases are clearly distinguishable from Alicea's experience, the breadth of the misconduct which they represent is highly relevant to the existence of the City's custom of acquiescence in PPD's allegedly unconstitutional actions.

Alicea also alleges the necessary causation between the City's custom of knowledge and acquiescence and his own injuries. The Amended Complaint draws a clear causal link: the City permitted the PPD to violate rights by, for example failing to turn over exculpatory evidence, the individual defendants failed to turn over evidence tending to show Alicea's innocence, and Alicea was wrongfully convicted in violation of his due process rights. *See Losch v. Borough of Parkesburg, Pa.,* 736 F.2d 903, 910 (3d Cir. 1984). These alleged facts suggest that PPD's practices, which it was the City's custom to condone, directly led to Alicea's injuries.

This claim may also proceed under the deliberate indifference theory of *Monell* liability, which arises when a municipality fails to train, supervise, or discipline its employees. *Forrest*, 930 F.3d at 106. To demonstrate deliberate indifference, a plaintiff must show "(1) municipal

policymakers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Id.*

Alicea alleges a number of failures on the part of the City, including delays in resolving disciplinary complaints and a failure to investigate reported incidents. Am. Compl. ¶ 189. He also alleges this was done with deliberate indifference, as the City knew the individual defendants were mishandling criminal investigations, leading to constitutional violations, yet deliberately chose to let the practices continue. *Id.* ¶¶ 176-77. "Indeed, the sheer volume of complaints"—including those that led to injunctions and consent degrees, *see id.* ¶¶ 184-87—reasonably shows the City was aware of the misbehavior yet made a deliberate choice to allow it to continue. *Forrest*, 930 F.3d at 109. The Amended Complaint plausibly pleads *Monell* liability, regardless of which theory is applied.

**CONCLUSION**

Count II's malicious prosecution claim, to the extent it relies on the Fourteenth Amendment, will be dismissed, as will Count IV's municipal liability claim for the same reason. The balance of Alicea's claims will proceed to discovery.

An appropriate Order follows.

BY THE COURT:


/s/ Juan R. Sánchez
Juan R. Sánchez, C.J.